**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:

CASE NO. 6:24-bk-05475-TPG

IVF ORLANDO, INC.,                                      CHAPTER 11

      Debtor.

_____/

FOX FUNDING GROUP, LLC,

      Plaintiff,

v.                                                                    ADV. PRO. NO.

IVF ORLANDO, INC.,

      Defendant.

_____/

<u>**COMPLAINT FOR DECLARATORY AND OTHER RELIEF**</u>

Plaintiff, Fox Funding Group, LLC ("FFG"), by and through its undersigned counsel, for its Complaint for Declaratory and Other Relief states as follows:

**JURISDICTION AND VENUE**

1.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334. The Court may hear and determine this adversary proceeding because this adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

2.      Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

**PARTIES**

3.      FFG is a Florida limited liability company with its offices located in Hollywood, Florida.

4.      Defendant, IVF Orlando, LLC ("Debtor"), is the Debtor in the underlying bankruptcy case.

**FACTS**

5.      On September 19, 2024, FFG and the Debtor entered into a Future Receivables Sale and Purchase Agreement ("Agreement") under which the Debtor sold, assigned and transferred to FFG

> the Purchased Percentage [defined as 4.8%] of all of [Debtor's] accounts receivable and payment rights arising out of or relating to [Debtor's] sale or delivery of goods and/or services due to [Debtor] after the date of this Agreement, whether paid directly by [Debtor's] customers or paid by others on [Debtor's] customers' behalves or as reimbursements (the "Receipts") up to the Purchased Amount [defined as $92,300]…

A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

6.      The Agreement expressly provides that FFG "purchased and shall own all the Receipts described in the Agreement up to the full Purchased Amount as the Receipts are created" and that "the Receipts shall be held in the Account in trust in favor of FFG, and [Debtor] shall have no legal or equitable interest in the Purchased Amount of Receipts." *See* Agreement, Section 1.9.1.

7.      The Agreement sets forth a procedure for FFG to obtain the Receipts sold to it by the Debtor under the Agreement.

8.      The Debtor was required to designate a bank account in the Agreement which would operate as a trust account into which all Receipts would be deposited that had to be approved by FFG.  This bank account is defined in the Agreement as the Account.

9.      FFG was then to debit the Weekly Remittance, defined in the Addendum to the Agreement as $3,076.66, weekly from the Account.  The Weekly Remittance specified in the Agreement was meant to equal the Specified Percentage, defined in the Agreement as 4.8%, of Receipts based upon historical revenue information provided by the Debtor to FFG during due

diligence and is subject to adjustment pursuant to a reconciliation procedure that is set forth in Section 1.5 of the Agreement that would be conducted at the Debtor's request to ensure the amount ultimately debited by FFG from the Account equaled the Specified Percentage of Receipts collected by the Debtor on a daily basis.

10.     Debits of the Specified Percentage of Receipts from the Account were to continue as described so long as the Debtor was collecting Receipts and until the full amount of Receipts purchased by FFG under the Agreement were collected.  However, the Debtor's inability to remit Receipts to FFG because it went out of business or did not collect any Receipts on a given day is not an event of default under the Agreement.

11.      Ultimately, only one debit of the Weekly Remittance was made under the agreement – on September 26, 2024– and then the Debtor, on October 8, 2024 ("Petition Date") filed its voluntary petition for relief under the United States Bankruptcy Code.  Thus, as of the Petition Date, the Debtor had not remitted $89,223.35 of the Receipts it sold to FFG.

12.     Prior to entering into the Agreement with the Debtor, FFG conducted due diligence, and the Debtor made certain representations and warranties to FFG in connection with its due diligence that FFG relied upon when it agreed to enter into the transaction.

13.     Importantly, the Debtor represented and warranted to FFG that as of the date the Agreement was entered into that it was not insolvent, did not contemplate filing for bankruptcy in next six months and had not consulted with a bankruptcy attorney.  *See* Agreement, Section 2.10.

14.     However, less than 30 days after entering into the Agreement and obtaining payment of $63,700 from FFG, the Debtor filed for bankruptcy.

15.     Through this action, FFG seeks a determination that the Receipts the Debtor sold to it are not property of the bankruptcy estate and recovery of such Receipts or, in the alternative,

to the extent the transaction is deemed not to be a true sale and, instead, gave rise to a debt, to except the debt from any discharge the Debtor may receive in the case.

**COUNT I- DETERMINATION OF WHETHER RECEIPTS SOLD, ASSIGNED AND TRANSFERRED TO FFG BY THE DEBTOR ARE <u>PROPERTY OF THE BANKRUPTCY ESTATE</u>**

16.     FFG incorporates by reference its allegations in Paragraphs 1 through 15 of the Complaint.

17.     Under the Agreement, the Debtor sold Receipts to FFG.  The Receipts the Debtor sold to FFG are accounts, as that term is defined in UCC§ 9-102(2).

18.     As the transaction between the Debtor and FFG was a sale of accounts, the Debtor retained no legal or equitable interest in the accounts it sold to FFG under the Agreement, making such accounts (i.e. the Receipts) not property of the bankruptcy estate because the Debtor had no legal or equitable interest in them as of the Petition Date.  *See, e.g.,* UCC §9-318(a); *In re R&J Pizza Corp.*, 2014 Bankr. LEXUS 5461 (Oct. 14, 2014) (engaging in true sale analysis); 11 U.S.C. §541(a).

19.     The following factors, among other factors, further demonstrate that the transaction evidenced by Agreement is a true sale of accounts and, as such, the Debtor retained no legal or equitable interest in the Receipts it sold to FFG:

   a.     The language in the Agreement consistently refers to the transaction as a purchase and sale.

   b.     FFG has no recourse if Debtor goes out of business, experiences a slowdown in business or a delay in collecting Receipts.  Such circumstances are not events of default under the Agreement.

   c.     The Debtor has no right to repurchase the Receipts sold to FFG under the Agreements.

   d.     The Receipts were deposited into a trust account and the Debtor was merely a fiduciary for FFG for collection purposes.

**WHEREFORE**, FFG respectfully requests that this Honorable Court enter a judgment declaring that the uncollected Receipts in the amount of $89,223.35 sold to FFG by the Debtor under the Agreement are not property of the bankruptcy estate and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

### COUNT II- DECLARATON THAT DEBTOR MUST TURNOVER THE UNCOLLECTED RECEIPTS TO FFG IF THEY ARE DEEMED TO NOT BE PROPERTY OF THE BANKRUPTCY ESTATE

20.     FFG incorporates by reference its allegations in Paragraphs 1 through 19 of the Complaint.

21.     To the extent the Receipts are determined to be not property of the bankruptcy estate, the Debtor is obligated to turnover the uncollected Receipts to FFG as a matter of law. *See In re Florian*, 233 B.R. 25, 27 (Bankr. D. Ct. 1999) (directing trustee to turn over insurance proceeds that did not constitute property of the debtor's estate); *Matter of Georgian Villa, Inc.*, 10 B.R. 79, 84-85 (Bankr. N.D. Ga. 1981) (holding that, where it appears that the debtor has no beneficial interest in the property, such property should be turned over to its true owner).

**WHEREFORE**, FFG respectfully requests that, to the extent the Court determines that the uncollected Receipts are not property of the bankruptcy estate, that the court enter a judgment declaring that the Debtor is obligated to turnover the uncollected Receipts to FFG and granting such other and further relief as this Court deems just and proper.

### COUNT III- BREACH OF FIDUCIARY DUTY

22.     FFG incorporates by reference its allegations in Paragraphs 1 through 21 as though fully set forth herein.

23.     Under the Agreement, the Debtor became a fiduciary for FFG, which included the duty to hold the Receipts in trust in the Account for the benefit of FFG.

24.     The Debtor has breached its fiduciary duties to FFG by, among other things, failing to hold the Receipts in trust in the Account for the benefit of FFG.  Instead, the Debtor has been utilizing the Receipts throughout the pendency of the case.  The Debtor also sought authority from this Court to use cash collateral without disclosing to the Court that it had a fiduciary duty to hold the Receipts on trust and that the Receipts had been sold pre-petition to FFG.

25.     FFG has been injured by the Debtor's breach of its fiduciary duties to FFG because the Debtor has used the Receipts it sold to FFG rather than holding them in trust in the Account in violation of the Agreement.

**WHEREFORE**, FFG respectfully requests that this Honorable Court enter an Judgment in its favor against the Debtor in the amount of $89,223.35, or, in the alternative in the amount of damages the Court finds FFG has suffered as a result of the Debtor's breach of its fiduciary duties to FFG and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

### <u>COUNT IV- CONVERSION</u>

26.     FFG incorporates by reference its allegations in Paragraphs 1 through 25 of the Complaint as though fully set forth herein.

27.     The Debtor sold Receipts to FFG pre-petition and, as such, FFG owns the Receipts.

28.     The Debtor has used the Receipts it purchased and owns without FFG's consent, without notifying the Court of FFG's interest in the Receipts when it sought authority to use cash collateral, and in contravention of a trust agreement between it and FFG.  A demand for return of the Receipts by FFG would be futile because it is not possible for the Debtor to return the actual Receipts used by the Debtor during the pendency of the case.

28.     FFG has unquestionably been damaged by the Debtor's use of the Receipts it owns as the Receipts are now not available for turnover to FFG as required.

**WHEREFORE**, FFG respectfully requests that this Honorable Court enter a judgment in favor of FFG and against the Debtor in the amount of $89,223.35 or in the amount of the Receipts the Court finds have been converted and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

### COUNT V- EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. §523(a)(2)(A)

29.     FFG incorporates the allegations in Paragraphs 1 through 28 of the Complaint as though fully set forth herein.

30.     To the extent the transaction between the Debtor and FFGis deemed to not be a true sale, FFG contends that the $89,223.35 owed to it under the Agreement is not subject to discharge under 11 U.S.C. §523(a)(2)(A).

31.     The Debtor entered into the Agreement and received payment of $63,700 from FFG less than 30 days prior to the Debtor filing its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

32.     At the time the Debtor entered into the Agreement with FFGit represented and warranted to FFG  that as of the date the Agreement was entered into that it was not insolvent, did not contemplate filing for bankruptcy in next six months and had not consulted with a bankruptcy attorney.

33.     These representations were false when they were made by the Debtor to FFG. This is evident from the fact that the Debtor filed for bankruptcy less than 30 days after making such representations.

34. FFG reasonably relied on the Debtor's representations that it did not contemplate or anticipate filing for bankruptcy when it entered into the Agreement with FFG because there were no red flags present when FFG conducted its due diligence prior to entering into the Agreement with the Debtor. FFG would not have entered into the transaction if the Debtor had disclosed it may file for bankruptcy.

35. FFG has been damaged because of the Debtor's false representation that it did not contemplate filing for bankruptcy. FFG was only able to collect a total of $3,076.65 of the Receipts it purchased from the Debtor after paying $63,760 to the Debtor and even though the Debtor has continued to operate and collect Receipts since it entered into the Agreement and during the pendency of this case.

**WHEREFORE**, FFG respectfully requests that this Honorable Court enter a judgment in its favor of it finding that $89,223.35, plus fees and interest, is excepted from any discharge obtained by the Debtor in this case pursuant to 11 U.S.C. §523(a)(2)(A) and granting such other and further relief as this Court deems just and proper.

### COUNT VI- EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. §523(a)(2)(B)

36. FFG incorporates the allegations in Paragraphs 1 through 35 of the Complaint as though fully set forth herein.

37. To the extent the transaction between the Debtor and FFG is deemed to not be a true sale, FFG contends that the $89,223.35 owed to it under the Agreement is not subject to discharge under 11 U.S.C. §523(a)(2)(B).

38. The Debtor entered into an Agreement with FFG and received payment of $63,700 from FFG less than 30 days prior to the Debtor filing its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

39.     At the time the Debtor entered into the transaction with FFG it represented and warranted to FFG, in writing, that as of the date the Agreement was entered into that it was not insolvent, did not contemplate filing for bankruptcy in next six months and had not consulted with a bankruptcy attorney.

40.     These representations were false when they were made by the Debtor to FFG. This is evident from the fact that the Debtor filed for bankruptcy shortly after making the representations to FFG.

41.     FFG reasonably relied on the Debtor's written representations that it did not anticipate or contemplate filing for bankruptcy because there were no red flags present when FFG conducted its ordinary and standard due diligence prior to entering into the Agreement with the Debtor. FFG would not an entered into the Agreement if it has known that the Debtor contemplated filing for bankruptcy at that time.

42.     FFG has been damaged because of the Debtor's false representations that as of the date the Agreement was entered into that it was not insolvent, did not contemplate filing for bankruptcy in next six months and had not consulted with a bankruptcy attorney. FFG was only able to collect a total of $3,076.65 of the Receipts it purchased from the Debtor after paying $63,700 to the Debtor and even though the Debtor has continued to operate and collect Receipts since it entered into the Agreement and during the pendency of this case.

**WHEREFORE**, FFG respectfully requests that this Honorable Court enter a judgment in its favor of it finding that $89,223.35, plus fees and interest, is excepted from any discharge obtained by the Debtor in this case pursuant to 11 U.S.C. §523(a)(2)(B) and granting such other and further relief as this Court deems just and proper.

Dated:  February 18, 2025

Respectfully Submitted,

*/s/ Lauren G. Raines*
Lauren G. Raines, Esq.
Fla. Bar No. 11896
BRADLEY ARANT BOULT CUMMINGS
LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
P: (813) 559-5500 | F: (813) 229-5946
Primary email: lraines@bradley.com
Secondary email: jbrandt@bradley.com
*Local Counsel for Fox Funding Group, LLC*

-and-

KAMINSKI LAW, PLLC
Shanna M. Kaminski
*Pro Hac Vice Admission Pending*
P.O. Box 247
Grass Lake, MI 49240
(248) 462-7111
skaminski@kaminskilawpllc.com